MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2020 ME 78
Docket:       Pen-19-504
Argued:       May 11, 2020
Decided:      June 2, 2020

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

STATE OF MAINE

v.

JESSEE MACKIN

MEAD, J.

[¶1]    Jessee Mackin appeals from a judgment of conviction for manslaughter (Class A), 17-A M.R.S. § 203(1)(A) (2020), entered by the trial court (Penobscot County, *Anderson, J.*) following a jury-waived trial. Mackin contends that the evidence admitted at trial was insufficient to prove beyond a reasonable doubt that he caused the child victim's death.[1] We affirm the judgment.

---

[1] Mackin also asserts that because the evidence indicates that the child's fatal injuries were inflicted intentionally, he could not have acted with criminal negligence as the court found. *See* 17-A M.R.S. § 203(1)(A) (2020) ("A person is guilty of manslaughter if that person . . . [r]ecklessly, or with criminal negligence, causes the death of another human being."). This argument is not persuasive and we do not discuss it further.

## I. FACTS AND PROCEDURE

A.    Facts

[¶2]  Viewing the evidence in the light most favorable to the State, *see State v. Brown*, 2017 ME 59, ¶ 7, 158 A.3d 501, the trial court's oral and written factual findings are well supported by the record.

[¶3]  In announcing its verdict, the court found:

> On May 5 of 2015, EMTs from Millinocket went to an address on Katahdin Avenue in Millinocket where Jessee Mackin and [the child's mother] resided, as well as [the child], who was about seven months old at the time. . . . When the EMTs arrived [the child] was not breathing but . . . did have circulation, his heart was beating, but he was obviously suffering from a very severe injury. . . . [B]ecause of the severity of the injuries he was Life Flighted to Bangor to Eastern Maine Medical Center. . . . [The child] died on May 7.
>
> . . . .
>
> . . . [C]oncerning the cause of death we had an autopsy and we had . . . Dr. Ricci, and we had a neurologist testify.  And what one has to conclude concerning the cause of death is that [the child] died from a massive skull fracture.  That this is not the type of injury that . . . your child gets when your child falls down or he falls off a bassinet or something like that. . . .
>
> . . . Dr. Ricci's conclusions were rather unequivocal, and he testified that the child died of this massive skull fracture caused by a dramatic force to the skull.   The child also had retinal hemorrhaging, and it was Dr. Ricci's opinion that there was a rotational force implied with the traumatic injury to the . . . left side of the head.  And he also indicated that the child had a brain stem injury, that he would have immediately stopped breathing upon

sustaining this traumatic injury. There would have been an immediate loss of consciousness.

. . . [T]hat testimony was corroborated by the testimony of a neurologist. Ultimately, she was no less unequivocal than Dr. Ricci. . . . [T]he loss of consciousness would have been immediate. So the two experts who were opining about this aspect of the case were consistent in their conclusions.

So what this case really narrows down to, and it's not a terribly complicated case . . . is if the science, the medical science in support of the opinion of the two experts, if that has been proved . . . then Mr. Mackin caused the death of this child. It's inescapable. If you accept the science, it's inescapable, based on the other evidence in the case, that he caused the death of the child. And that's because he said he was with the child . . . since around two o'clock. The call came in around 3:30. So he'd been with the child[,] . . . and the child basically died in his arms.

. . . [I]f there were a controversy . . . about . . . how long the injury could have taken place prior to [the child] going limp . . . [this] [c]ould be a different case. But that doesn't seem to be at issue based on the testimony at trial. It could also be a different case if there was a controversy about who had control over the child during that period of time. And there isn't any controversy about that. . . . [B]oth [the mother and Mackin] agree that the child was with Mr. Mackin, [and] was not with [the mother] prior to this.

There was no conflicting evidence concerning [the] medical aspect of the case. . . . I come away from the testimony of [Dr. Ricci and the neurologist] finding that the State has proved beyond a reasonable doubt that whoever was with the child shortly before the child going limp caused the death of the child. So I'm finding beyond a reasonable doubt Mr. Mackin caused the death of the child.

. . . [B]ased on the facts that were testified to at trial, this could not have been an accidental injury. There was no description by

any witness of an accidental injury and . . . I think Mr. Mackin was not telling the truth when he testified about what happened. So when I combine his lack of being forthright with the testimony concerning the amount of force necessary, I'm finding that . . . he inflicted the injury in a criminally negligent fashion. . . . [S]o I'm finding the defendant guilty of this charge.

[¶4]  The court made additional factual findings in its written decision on the State's motion for further findings and Mackin's motion for a new trial:

Earlier [in delivering the verdict], I had stated "(i)t's inescapable. If you accept the science, it's inescapable, based on the other evidence in the case, that he caused the death of the child." I made these statements based on the witnesses' conclusions that the injury to [the child] was so traumatic that it would have resulted in his immediate complete loss of consciousness. . . .

I find the testimony of Dr. Lawrence Ricci and [the neurologist] to be reliable and accept the testimony as accurately describing [the child's] injury as well as its severity. Based on the testimony . . . I also find beyond a reasonable doubt that there would have been an immediate loss of consciousness when the injury was inflicted.

Mr. Mackin was the only person who was in physical contact with the child immediately before the baby's loss of consciousness. There was no dispute about this. . . . The only person who had physical contact with the child when the fatal injury had to have been inflicted is Mr. Mackin. No one else had any contact with [the child] during this critical period of time.

B.    Procedure

[¶5]  In February 2016, a grand jury indicted Mackin on a charge of manslaughter (Class A), 17-A M.R.S. § 203(1)(A). Following two changes of

counsel, Mackin waived a jury trial in March 2019. The court held a bench trial on April 16-18, 2019, and took the case under advisement. On May 15, 2019, the court held a hearing and announced its verdict of guilty. The State subsequently moved for clarification of the verdict and for further findings, in response to which the court made additional findings. The court denied Mackin's M.R.U. Crim. P. 33 motion for a new trial.

[¶6] At the sentencing hearing, the court entered judgment and sentenced Mackin to eleven years' imprisonment, with all but five years and six months suspended, and four years of probation. Mackin timely appealed. *See* M.R. App. P. 2B(b).

## II. DISCUSSION

[¶7] In making its factual findings, the court was "permitted to draw all reasonable inferences from the evidence, and decide the weight to be given to the evidence and the credibility to be afforded to the witnesses." *Brown*, 2017 ME 59, ¶ 7, 158 A.3d 501 (quotation marks omitted). On this record, the court was amply justified in finding beyond a reasonable doubt that Mackin, acting with criminal negligence, caused the child's death given its supported findings that (1) the child's death resulted from an inflicted injury and (2) only

Mackin could have inflicted it. *See* 17-A M.R.S. § 203(1)(A); *State v. Scott*, 2019 ME 105, ¶¶ 35-37, 211 A.3d 205.

The entry is:

Judgment affirmed.

---

Stephen C. Smith, Esq. (orally), and John E. Baldacci, Jr., Esq., Lipman & Katz, PA, Augusta, for appellant Jessee Mackin

Aaron M. Frey, Attorney General, and Leanne Robbin, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2016-648
FOR CLERK REFERENCE ONLY